C. HORN *v.* STATE.

[60 South. 1011.]

HOMICIDE.    *Manslaughter.    Evidence.*

*Held,* that under the evidence in this case as shown in the opinion of the court, a verdict of manslaughter was not warranted.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

C. Horn was convicted of manslaughter, and appeals. The facts are fully stated in the opinion of the court.

*T. D. Marshall, H. H. Coleman,* and *R. M. Kelly,* attorneys for appellant.

*Geo. H. Ethridge,* assistant attorney-general, for the state.

Argued orally by *R. M. Kelly,* for appellant and *Geo. H. Ethridge,* for the state.

REED, J., delivered the opinion of the court.

Appellant was convicted of manslaughter. He is a cripple, and has been from his birth. He gets his living by sitting at the street corners offering to sell shoe strings and pencils, and receiving the assistance from the charitably disposed. He is one of society's unfortunates.

It was on a Sunday, and appellant, with his companion, was in Vicksburg. They had been sitting on the banks of the river during the forenoon, and went together to a restaurant for food. While there eating, two men, Shropshire, the deceased, and his companion, Sanders, came in. Sanders was very insulting to appellant, and threatened and abused him, using the most vile epithets. The keeper of the restaurant required Sanders and Shropshire to leave. In about fifteen or twenty minutes they returned, and Sanders again threatened appellant, cursing him and saying that he wanted to cut his throat. Sanders and Shropshire were prevented from coming into the restaurant, and finally started up the street. Then appellant with his companion went out of the building and stated they were going to take the train for Jackson. They overtook Sanders and Shropshire on the street, and there the difficulty occurred.

The testimony shows that appellant struck Shropshire with his walking stick, knocking him down, and that he then attacked Sanders with his stick and struck him down. The testimony for the defense shows that at the time when appellant struck the first blow Sanders had a knife in his hand, and Shropshire had his hands in his pockets, and that Shropshire was nearer to appellant than Sanders. Appellant testified that Shropshire was in a

threatening attitude and had just used insulting words to him when appellant struck. Shropshire was taken to a sanitarium and in a few days died. It was found that his skull just behind the ear had been fractured by the blow. It seems that the blow reached the thinnest part of the skull.

It will be noted that appellant did not originally bring on the trouble with Sanders and Shropshire; that when the difficulty occurred he was traveling the public street, as he had a right to; and that from what had already taken place, including the efforts of Sanders and Shropshire to assault him and do him bodily harm, together with the threatening attitude of the two men at the time, he had reason to believe he was about to be assaulted by the two men. It appears to us that he was justified in defending himself as he did. Being a cripple and carrying a stick, as of necessity, it would have been strange indeed if he had not used the stick in the affray for his defense.

To reach a proper conclusion, it is necessary to consider the whole testimony in this case, that for the defense as well as that for the state. Taken alone and disconnected from the testimony for the defense, the testimony for the state might warrant a conviction. A careful examination shows us that the entire testimony largely harmonizes. Considering all of the facts, we cannot believe that appellant should have been found guilty.

*Reversed and remanded.*

SMITH, C. J. (dissenting).

My conception of the facts in this case, as disclosed by the record, is entirely different from that of my brethren. There were only three eyewitnesses to the actual homicide—appellant himself, his companion Ryan, and Ralph Romano. According to the testimony of appellant and Ryan, he (appellant) acted in self-defense. Accord-

ing to the testimony of Romano, he attacked deceased without provocation, and struck him at a time when deceased was doing nothing which indicated in the remotest degree that he purposed to assault appellant.